**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elias MARTINEZ, Defendant–Appellant.**

**No. 79–5558.**

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1980.

---

David Bruce Neeley, McAllen, Tex., for defendant–appellant.

James R. Gough, Jr., Asst. U. S. Atty., Houston, Tex., for plaintiff–appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

Defendant Elias Martinez appeals his criminal conviction on the ground that he was denied effective assistance of counsel. Martinez was tried on seven counts of distributing or conspiring to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846, and he was represented by retained counsel, Matias Morin. Among the witnesses against Martinez was Alonso Quintanilla, Jr., who figured in three of the counts upon which Martinez was tried. Quintanilla had previously been convicted on a heroin charge arising out of the same transaction as underlay one of the counts against Martinez, and the government had dismissed another charge against Quintanilla that involved the same events as another of Martinez' counts. The attorney who represented Quintanilla on these matters was also Matias Morin.

As Martinez' trial was about to begin, Morin observed that Quintanilla was in the courtroom as a witness for the prosecution, which was a surprise to him because Quintanilla's name had not been on a list of government witnesses that the prosecution had provided him. As soon as the court convened, Morin informed the judge that he had previously represented Quintanilla on charges related to the defendant's, that he would feel uncomfortable cross examining Quintanilla because to do so thoroughly would require him to broach matters that Quintanilla had told him in confidence, and that this discomfort might impair his effectiveness in representing Martinez. The court, however, instructed Morin to proceed to trial and to question Quintanilla vigorously because the charges against Quintanilla had been resolved and Morin's representation of him completed and thus Morin had no conflict of interest that might impair his representation of Martinez. Morin complied with the court's directive and, at the appropriate time, cross examined Quintanilla. Martinez was convicted on all seven counts and was given concurrent sentences for each of ten years imprisonment followed by four years special probation. We find that the defendant's convictions on some of the seven counts cannot stand.

The rule in this circuit is clear: if a criminal defendant is represented at trial by an attorney, either appointed or retained, who labors under an actual, and not merely a potential, conflict of interest, the defendant has been denied effective assistance of counsel as a matter of law; and, unless he has knowingly and intelligently waived his sixth amendment right to conflict–free representation, reversal is automatic. No prejudice need be shown. *Stephens v. United States,* 595 F.2d 1066 (5th Cir. 1979); *Zuck v. Alabama,* 588 F.2d 436 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *United States v. Alvarez,* 580 F.2d 1251 (5th Cir. 1978). Although we have previously applied this rule where a defendant's attorney

concurrently represented a prosecution witness at trial, *Stephen, supra* ; *Alvarez, supra*, we apparently have not yet applied it where the attorney only previously represented such a witness. We do so now, however, on the facts of the present case.

The defendant's attorney informed the court that effective representation of his client would compel him to violate confidences that had been entrusted to him by his prior client and that he was reluctant to do so. By his own admission, therefore, Morin perceived–and rightly so–that he had a duty to Quintanilla to preserve the latter's confidential communications; and he felt that this duty, coupled with his commitment to Martinez to serve "as a vigorous advocate having the single aim of acquittal by all means fair and honorable," *Porter v. United States*, 298 F.2d 461, 463 (5th Cir. 1962), presented him with an actual conflict of interest. Since Morin explained his predicament to the court as soon as he became aware of it and not, for example, in a belated motion for mistrial after he had already cross examined his former client, see *United States v. Cochran*, 499 F.2d 380 (5th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975), we have no reason to doubt his sincerity. The record of Morin's cross examination of Quintanilla, moreover, strongly suggests that Morin–torn between conflicting duties–in fact found it necessary to trench upon the confidential relationship between himself and Quintanilla.[1] While the record thus appears to disclose that Morin in fact interrogated Quintanilla quite vigorously for the benefit of Martinez, we cannot be sure that, because he failed to pull some punches, he refrained from pulling others. And even could we be sure, our precedents establish that a lack of actual prejudice is irrelevant if an actual conflict of interest obtains.

■ We conclude, therefore, that Martinez did not receive effective assistance of counsel with regard to the cross examination of Quintanilla.[2] It is clear, moreover,

---

1. Consider, for example, the following passages of their dialogue:

    Q [by Morin] Let's go on to these other three ounces that you delivered in September. Didn't you at one time tell me you got these three ounces from a man in Reynosa?

    A [by Quintanilla] No.

    Q Did you ever tell me where you got these three ounces?

    A No, just now.

    Q This is the very first time you told me where you got these three ounces, is that correct?

    A Yes.

    Q Let me ask you, didn't you at one time give me a written statement telling me where you got those three ounces?

    A Yes, I had given a writ, but the owner had not signed as to who those ounces belonged to.

    Q What did you state in that written statement you gave me?

    A I don't remember any more.

    Q Do you remember anything?

    A No.

    Q Do you remember mentioning any names?

    A Yes, I do remember a name, but I don't remember the name of the man who went to buy from me at the house.

    Q What's that name?

    A I don't remember.

    Q Do you remember anything else you mentioned in that statement?

    Q Let me ask you, did you mention this man's (indicating [Martinez]) name in that statement?

    A No. But you know who it was.

    Q His name wasn't there?

    A It wasn't. But you knew who was there.

    Q Where did you sell these three ounces?

    A On Tower Road.

    Q Who lives there at that place?

    A It was a friend who lived there. The place where I made the deal was at the house of one of his brothers.

    Q Who was your friend?

    A His name is Roberto, but I don't remember his last name.

    Q Robert Valdez, would that refresh your memory?

    A Yes.

2. All of the cases that have been brought to our attention in which this court did not find ineffective assistance of counsel where a defense attorney had previously represented a witness, *Haggard v. Alabama*, 550 F.2d 1019 (5th Cir. 1977); *United States v. James*, 505 F.2d 898 (5th Cir.), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); *United States v. Cochran*, 499 F.2d 380 (5th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975); *Nelson v. United States*, 415 F.2d 483 (5th Cir. 1969), *cert. denied*, 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970); *Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968), are easily distinguishable. All were decided prior

that Martinez did not waive his right to such assistance:

> In order for a defendant effectively to waive his right to conflict–free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975); *see also Gray v. Estelle*, 574 F.2d 209, 213 (5th Cir. 1978); *United States v. Mahar*, 550 F.2d 1005 (5th Cir. 1978).

*Alvarez*, 580 F.2d at 1260; *see Zuck*, 588 F.2d at 440. Not only does the record fail to show that the trial judge addressed the defendant at all on the subject of waiver, but, since Morin's discussion with the judge was a bench conference, the record does not even support an inference that the defendant was aware that his attorney believed himself plagued by a conflict of interest.

While we find that Martinez' sixth amendment right was violated and that that right was not waived, we do not find that the violation infected the entire trial. Martinez' counsel was constitutionally ineffective only with regard to his cross examination of Quintanilla, and Quintanilla's testimony was conceivably relevant to three counts only of those on which Martinez was tried. We therefore reverse the defendant's conviction on those counts [3] but on those alone.

AFFIRMED in part, REVERSED in part.

---

to *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978), which relying on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), held that if a defendant's attorney had an actual conflict of interest, no prejudice need be shown, and all rested at least in part on the absence of prejudice to the defendant. In all of the cases except *Haggard*, moreover, the attorney had represented the witnesses on charges unrelated to those for which the defendant was tried.

3. The affected counts are those numbered one, six, and seven in the indictment.