952 F.2d 1401
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David CARLSON, Defendant-Appellant.
 Nos. 90-1094, 91-1113.
 United States Court of Appeals, Tenth Circuit.
 Jan. 17, 1992.
 
 Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.
 ORDER AND JUDGMENT**
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Defendant David E. Carlson was originally indicted in federal court on fifteen counts of mail fraud, equity skimming, and making false statements to the Department of Housing and Urban Development. Following eight days of trial to the court, Defendant was convicted of nine counts of mail fraud and one count of equity skimming. Defendant appealed his conviction, claiming that his waiver of jury trial was not made voluntarily, knowingly, or intelligently. This court, in an unpublished order and judgment, No. 88-1294, affirmed his conviction in June, 1989. Defendant now appeals the district court's denial of his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, asserting that, in his conviction for mail fraud and equity skimming, he was denied his constitutional rights to effective assistance of counsel and a trial by jury. We affirm.
 
 
 3
 Defendant was involved in approximately two hundred real estate transactions in which he purchased properties by assuming existing, nonqualifying, government insured VA and FHA loans. He made these purchases in his own name and in the names of various nominees. By Defendant's own admission, he planned to pay off the assumed mortgages and make a profit by "buying low and selling high." The real estate market in the Denver area did not cooperate and Defendant's properties went into foreclosure, costing the government in excess of $1,000,000 in mortgage insurance payments. A majority of the properties were rented or leased out. Defendant collected approximately $500,000 to $600,000 in rents over the period of time in question. However, no mortgage payments were made on the properties implicated in the indictment.
 
 
 4
 Defendant now claims that his trial attorneys, Alex Keller and Robert Johnson, had a conflict of interest which deprived him of effective assistance of counsel. Defendant states that one year prior to trial he delivered a plastic trash container full of business records to his attorneys' office and left it in the firm conference room. Apparently, the office janitors discarded the contents of the container, thinking it was refuse. Defendant claims that these records contained proof that he had expended collected rent monies on repairs and maintenance of the properties and would therefore support a good faith defense to the charges. Defendant claims that this loss of records created a conflict of interest which deprived him of effective assistance of counsel and severely prejudiced his defense. Defendant makes conclusory allegations such as, he and Ms. Alareeta Eidson, a defense witness, would have "testified differently," the loss of the records caused his trial to be "a sham," the loss of the records was the reason he "waived his right to a jury trial," and "everything he testified to at trial was skewed." Appellant's Br. at 5.
 
 
 5
 "While we review de novo the district court's determination of whether an actual conflict existed, the court's resolution of the underlying facts giving rise to its conclusion is subject to a clearly erroneous standard of review." United States v. Suntar Roofing, Inc., 897 F.2d 469, 480 (10th Cir.1990) (citing United States v. Soto Hernandez, 849 F.2d 1325, 1328-29 (10th Cir.1988)). Defendant presented no Sixth Amendment objection at his trial. Therefore, we can only disturb his conviction "if he demonstrates 'that an actual conflict of interest adversely affected his lawyer's performance.' " United States v. Bowie, 892 F.2d 1494, 1500 (10th Cir.1990) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).
 
 
 6
 In order to establish ineffective assistance of counsel, Defendant must show (1) that counsel's performance was deficient, and (2) that the deficiencies prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Where it is alleged that defense counsel has a conflict of interest, there are special considerations which apply. United States v. Winkle, 722 F.2d 605, 609 (10th Cir.1983). " '[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' " Id. (quoting Cuyler, 446 U.S. at 349-50). In order to establish " 'the constitutional predicate' " for a claim of ineffective assistance of counsel, Defendant must " 'show[ ] that his counsel actively represented conflicting interests.' " Soto Hernandez, 849 F.2d at 1329 (quoting Cuyler, 446 U.S. at 350). We agree with the district court's determination that no actual conflict existed.
 
 
 7
 Mr. Keller avers, and Defendant does not refute, that he had no knowledge of the contents of the plastic trash container except as recounted to him by Defendant. Appellee's App. at 53-54. Mr. Johnson and the firm law clerk, although both actively working on Defendant's case, also did not see or examine the business records prior to their loss. Appellee's App. at 77-78, 143-44. It appears to be undisputed that, following the loss of the records, Mr. Keller discussed with Defendant the possibility that he may have to withdraw from the case if he would be called upon to testify regarding the loss of the documents. Appellee's App. at 58, 165. Defendant apparently expressed his desire to have Mr. Keller remain as counsel. Id. at 58. "An ineffectiveness-due-to-conflict claim is waived if defendant 'consciously chose to proceed with trial counsel, despite a known conflict to which the defendant could have objected but chose to disregard.' " Moore v. United States, No. 91-7083, slip op. at 9 (10th Cir. Dec. 1, 1991) (quoting Winkle, 722 F.2d at 612 n. 12). A determination of whether Defendant effectively waived the alleged conflict is unnecessary, however, in light of our ultimate determination that no conflict existed.
 
 
 8
 Ms. Eidson testified that she had the documents in her possession for a short period of time for the purpose of sorting and organizing, but subsequently did very little with them due to the volume and disorganization of the records. Appellee's App. at 33-36. She accompanied Defendant when he took the documents to Mr. Keller's office. It appears from the record, that Ms. Eidson could have testified to the existence of the documents, but the record reveals no indication that she would have been able to testify with any large degree of specificity as to the contents of the documents or to their relativity to the transactions under indictment. Defendant, himself, testified that the documents evinced repairs and maintenance cost outlay on various properties, but that none of the documents established costs attributable to maintenance of the specific properties implicated in the indictment. Appellee's App. at 137.
 
 
 9
 The Colorado Code of Professional Responsibility states:
 
 
 10
 A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
 
 
 11
 (1) If the testimony will relate solely to an uncontested matter.
 
 
 12
 (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 
 
 13
 (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
 
 
 14
 (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
 
 
 15
 Colorado Code of Professional Responsibility DR 5-101(B) (1990). It appears counsel's projected testimony verifying a loss of the business records would have been uncontested as no one has refuted Defendant's belief in the existence of the documents, nor that the container of documents was delivered to counsel's office. We can ascertain no evidence available to the government which would have refuted these facts. It is our conclusion that counsel's testimony would have been only incidental to the defense, and even if it had been offered, it would not have created an identifiable conflict of interest mandating withdrawal.
 
 
 16
 If the evidence in the plastic trash container had been available and admissible, it allegedly would have shown that Defendant applied rent monies to maintenance and upkeep on certain properties. Defendant was not on trial for failure to maintain and repair the properties, however, nor was he accused of a failure to keep accurate records. His conviction was based on evidence that he assumed loans on government insured properties, collected rents and lease payments on the properties, and failed to make mortgage payments after the loan assumptions. He can point us to no evidence contained in the lost business records which would refute these facts. As the district court judge stated upon learning of the loss at the sentencing phase of the trial,
 
 
 17
 Mr. Carlson, while you place great importance in your statements about the loss of these documents, let me tell you it's not the enormity of the money which you spent on repairs or how little you spent on repairs that concerns me in this case, it's the enormity of the amount of money that was taken that was lost by other people.... [Y]our attorney in this case gave you the best defense possible, and I don't think that those documents in the waste basket that were lost would have had any affect at all on my judgment.
 
 
 18
 Appellee's App., Tr. of Sentencing Hr'g at 7-8. It is our conclusion that the district court was correct in assessing the importance of the lost documents to be minimal.
 
 
 19
 Defendant argues that the conflict was "two-prong[ed]." First, he contends that the conflict caused him and Alareeta Eidson to testify differently than they would have had the documents been available, and second, that the loss of the documents created competing interests between trial counsel's "need to protect his own interests as opposed to those of his client." Defendant cannot specify, however, the testimony which would have been elicited if the documents had been available as opposed to the testimony that was given. His first allegation is therefore conclusory and without merit. It is Defendant's belief that the reason his counsel did not bring the lost records to the attention of the court was to protect his retainer and fees which would have to be returned in the event of withdrawal. There is nothing in the record, however, to support this contention.
 
 
 20
 Defendant further contends that if he could have called trial counsel as a witness to testify to the loss of the records, he would never have waived his right to a jury trial. The record indicates that Defendant's decision to waive a jury trial was a strategic decision based upon counsel's advice that perhaps the court would be in a better position to understand the complexities of the case. Defendant's letter to counsel, Appellant's App. at 52-53, evinces his understanding and acceptance of this strategy.
 
 
 21
 In Bowie, 892 F.2d at 1500, we held that "defense counsel's performance was adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests." The purpose of the Sixth Amendment's guarantee of the effective assistance of counsel is not to assure the quality of legal representation, but only to ensure that defendants receive a fair trial. Strickland, 466 U.S. at 689. Defendant was given every opportunity to present his case to the judge. He called all the witnesses he wanted and introduced hundreds of documents into evidence. Mr. Keller testified that the firm attempted to reconstruct as many of the lost records as possible, and called as witnesses all the parties named by Defendant as providers of repair and maintenance services. Appellee's App. at 57-58. The evidence missing from the trial, which would have provided the best evidence of good faith, was documentation proving mortgage payments. It is undisputed, however, that this kind of evidence did not exist.
 
 
 22
 We cannot say that defense counsel's performance was adversely affected by any identifiable conflict of interest under the facts here presented. There is nothing to indicate that a different attorney representing Defendant, and having the benefit of the testimony of Mr. Keller regarding his very limited knowledge of the loss of the business records, would have conducted Defendant's defense differently or more competently.
 
 
 23
 Therefore, the judgment of the United States District Court for the District of Colorado is AFFIRMED. Defendant's Motion for Oral Argument is DENIED.
 
 
 
 *
 Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3