2005 OK CR 19

Sonny Lauren HARMON, Appellant

v.

STATE of Oklahoma, Appellee.

No. F–2004–423.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 2005.

Billy D. Vandever, Pauls Valley, OK, attorney for defendant at trial.

R. Richard Sitzman, Assistant District Attorney, Norman, OK, attorney for the State at trial.

Jarrod Stevenson, Appellate Defense Counsel, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## SUMMARY OPINION

CHAPEL, Presiding Judge.

¶ 1 Sonny Lauren Harmon was jointly tried and convicted of Second Degree Bur-

glary in violation of 21 O.S.2001, § 1435 in the District Court of Garvin County, Case Nos. CF–2002–53, CF–2002–55, and CF–2002–57; and of Feloniously Carrying a Weapon in violation of 21 O.S.2001, § 1283, in the District Court of Garvin County, Case No. CF–2002–59, all after two or more former convictions. In accordance with the jury's recommendation the Honorable Tom A. Lucas sentenced Harmon to twenty (20) years imprisonment in CF–2002–53; six (6) years imprisonment in CF–2002–55; six (6) years imprisonment in CF–2002–57; and ten (10) years imprisonment in CF–2002–59. Harmon appeals these convictions and sentences

¶ 2 Harmon raises eight propositions of error in support of his appeal:

I. The trial judge erred by refusing to recuse himself;

II. Harmon was denied effective assistance of counsel due to the conflict of interest between his trial counsel and the State's star witness;

III. The trial court erred by failing to quash the search warrant and all fruits of that search since the warrant was invalid as a matter of law and the police exceeded the bounds of the warrant;

IV. The trial court committed reversible error by failing to conduct a bifurcated proceedings since Harmon was charged with possession of a firearm after felony conviction in a multi-count case;

V. The evidence was insufficient to convict Harmon;

VI. The trial court committed reversible error when it failed to give the jury instructions of prior inconsistent statements;

VII. The trial court committed reversible error when it failed to dismiss the felonious possession of a firearm charge in CF–2002–59 since Harmon was already convicted of the exact same in [sic] crime in another county; and

VIII. The accumulation of errors deprived Harmon of a fair trial.

¶ 3 After thorough consideration of the entire record before us on appeal including the original record, transcripts, exhibits and briefs, we find the law and evidence require reversal.

■ ¶ 4 Harmon correctly claims in Proposition II that his trial counsel had a conflict of interest which interfered with his ability to receive a fair trial. Between August 24, 2001, and August 26, 2001, Sonny Harmon and his son, Tommy, ransacked the Nelson house in Pauls Valley. A portion of the stolen property went to Sunny Dawn Harmon, Harmon's daughter, who hid some in her house and put some in storage units. Sunny was the one to tell Harmon and Tommy that the Nelson house was empty and could be burglarized. Between August 31, 2001, and October 3, 2001, Harmon and Tommy burglarized two Pauls Valley businesses. Sunny Dawn was a witness against Harmon. She testified that she had been charged in Garvin County and other counties with crimes resulting from the Nelson burglary, had pled guilty, and was on probation. The State relied on Sunny to (a) corroborate Tommy Harmon's testimony against his father as brought in through preliminary testimony, and (b) rehabilitate its case after Tommy changed his story and testified that he did everything himself. Sunny was the most damaging witness against Harmon. Harmon's defense counsel, Vandever, represented Sunny in her plea proceedings. Harmon now claims that Vandever had an actual conflict of interest that deprived him of effective assistance of counsel, since Vandever could not ethically fully cross-examine Sunny about her plea or her role in the burglaries. He is correct. This Court considered a similar situation in *Livingston v. State*.[1] There, we noted that under these circumstances an attorney owes both the defendant (current client) and witness (former client) a duty of loyalty, including protection of confidences and a duty to avoid conflicts of interest.[2] We stated:

---

**1.** 1995 OK CR 68, 907 P.2d 1088.

**2.** *Id.* at 1091; *Allen v. State*, 1994 OK CR 30, 874 P.2d 60, 63; *Strickland v. Washington*, 466 U.S.

Regarding conflict of interests through joint representation, it is settled that where a defendant raises no objection at trial but demonstrates on appeal that an actual conflict adversely affected his attorney's performance, prejudice will be presumed. [citations omitted] This principle extends to 'any situation in which a defendant's counsel owes conflicting duties to the defendant and some other person.' [citations omitted] An actual conflict of interest exists where the interests of an attorney and a defendant diverge with respect to a material factual or legal issue or to a course of action.[3]

¶ 5 These proceedings differ from those in *Livingston* in that apparently no party recognized or discussed the conflict. There, all parties recognized the problem and the defense attorney offered to withdraw, before explicitly agreeing to limit cross-examination for bias in order to "avoid" the conflict. The State appears to misunderstand this portion of *Livingston*. While admitting *Livingston's* relevance, the State appears to believe that the conflict there was somehow caused by specific limitations on cross-examination which were part of the plea. The State argues that there is no conflict here because "the defendant's attorney had no limitations placed on him as to the terms of the adult guilty plea of Sunny." [Appellee's Brief at 14] The limitations on questioning in *Livingston*, as the opinion makes clear, were inherent in counsel's situation: by representing the witness in a prior hearing, counsel was privy to confidential information which could not be used to show the witness's bias against the defendant. That was counsel's situation here. In *Livingston* we held that we will presume prejudice from the adverse effect of inability to fully cross-examine for bias.[4]

¶ 6 The State claims Harmon fails to show prejudice because he cites no specific areas in which counsel could have questioned Sunny but did not. On the contrary, counsel's inherent conflict ensured that no such record would be made. *Livingston* presents the highly unusual circumstance in which counsel, on the record, described the confidential information he felt he could not bring before the jury. Far more common is Harmon's situation, where counsel does his best to cross-examine his previous client without revealing confidential information which goes to bias. Here, Sunny testified that she hated Harmon, and that he did not care about her.[5] The record shows she was in tears for most of her testimony. The record also shows that counsel was familiar with the complicated relationships and factual entanglement shared by Sunny, Harmon, Tommy and other family members. Counsel did thoroughly cross-examine Sunny regarding her statements and testimony that she was not involved in the burglaries and did not actually see Harmon commit the thefts. Counsel also cross-examined Sunny about a car burglary charge and embezzlement conviction she had which were unrelated to Harmon or the burglaries in this case. However, counsel did not cross-examine Sunny on any bias matters relating to her plea or the facts in this case. Ethically, he could not have done so. This proposition is granted, and all four cases are reversed and remanded for a new trial in which Harmon is represented by conflict-free counsel.

¶ 7 We find additional error in Proposition IV. Harmon did not testify at trial. He was jointly tried for three separate cases, all after former convictions. The first three cases were second degree burglaries,

668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

3. *Livingston*, 907 P.2d at 1091–92, *citing Allen*, 874 P.2d at 63–64; *Ellis v. State*, 795 P.2d 107, 110 (Okl.Cr.1990); *Wood v. Georgia*, 450 U.S. 261, 268–72, 101 S.Ct. 1097, 1101–03, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *Church v. Sullivan*, 942 F.2d 1501, 1512 (10th Cir.1991); *United States v. Bowie*, 892 F.2d 1494, 1501 (10th Cir.1990);

*United States v. Winkle*, 722 F.2d 605, 609–10 (10th Cir.1983).

4. *Livingston*, 907 P.2d at 1092.

5. The trial court denied Harmon's request to show one reason for this hatred by introducing collateral evidence that Sunny had stolen Harmon's car. If anything, this attempt suggests counsel tried to breach a duty to Sunny in order to represent Harmon.

which were appropriately tried to guilt-innocence in a first stage and sentencing in a second stage. The fourth charge was Feloniously Carrying a Firearm, which requires proof that a defendant has prior convictions and is thus ineligible to have a firearm. This charge was also, inexplicably, tried to guilt-innocence in the first stage and sentencing in a second stage along with the burglary charges. This Court has explicitly set out the proper procedure for handling these cases—crimes containing as an element a prior conviction shall be tried to guilt and punishment in the second stage.[6] In order to avoid mentioning Harmon's priors during the first stage, the trial court (without objection) gave an incomplete instruction on the Feloniously Carrying charge which directed jurors to determine whether Harmon knowingly possessed a pistol. This is not a crime. The elements of the crime with which Harmon was charged are: (a) knowingly and willfully (b) possessing or having at his residence (c) any pistol or dangerous or deadly firearm which could be easily concealed, (d) and the defendant was convicted of a particular felony in a particular court on a particular date.[7] As the Committee Comments to the uniform jury instruction note, under most circumstances it is legal to own or possess a firearm in Oklahoma; the element of a prior conviction creates the crime and thus must be specifically pled, proved and instructed on. The State admits the trial court failed to instruct on the elements of the crime. Whether or not the defendant agrees to the instructions, it is plain error to fail to instruct on the elements of a crime.[8] The question is whether, beyond a reasonable doubt, the jury's verdict was not affected by the erroneous instruction.[9]

¶ 8 The State argues any error in first stage instruction makes no difference since the jury found "the first three elements existed in the first stage and found that the fourth element, the prior felony, was proven beyond a reasonable doubt in second stage." [Appellee's Brief at 24] The State argues this protected Harmon from the potential prejudicial effect of his conviction during the first stage.[10] That is, the State argues that three elements of the crime were proved in the guilt-innocence stage while the fourth was proved at sentencing. This misses the point. Harmon's jury was never instructed on the elements of possession of a firearm after conviction or while on probation. During the first stage, the jury never heard that the felonious carrying charge in CF–2002–59 required a prior conviction. The Information read to the jury before opening argument stated Harmon unlawfully, willfully and feloniously had a firearm "contrary to the form of the statutes in such cases". The charge itself is referred to as "Feloniously Carrying a Firearm." Instruction 14 modified OUJI–CR (2nd) 6–39, describing the elements of "possessing a firearm" as (a) knowingly and willfully (b) possessing, having under one's immediate control or having in at the place where the defendant resides (c) any pistol. This instruction correctly cited the first three elements of the charged crime, but not the fourth, without which there is no crime.

¶ 9 The jury's first stage verdict found Harmon guilty of "felonious possession of a firearm." During the second stage, jurors were instructed they had found Harmon "guilty of the crime [sic] of Felonious Possession of Firearm", and told to "determine the proper punishment." *Even at this point,* the instruction did not mention that the crime required a former felony conviction.

6. *Chapple v. State,* 1993 OK CR 38, 866 P.2d 1213, 1217.

7. OUJI–CR (2nd) 6–39.

8. *Pope v. Illinois,* 481 U.S. 497, 502, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987); U.S. Constitution, Amend. 14.

9. *See, e.g., Pope,* 481 U.S. at 502, 107 S.Ct. at 1922 (unconstitutional added element in instruction subject to harmless error analysis; harmless where improper instruction added to but did not

change essential elements); *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) (improper burden-shifting instruction on elements subject to harmless error analysis; harmless where jury was instructed on essential elements of the crime).

10. The State relies on *Chapple,* 866 P.2d at 1217, which came to that conclusion. There is no indication that the jury in *Chapple* was not informed of the elements of the crime charged.

The instruction noted the single conviction the State had chosen to enhance this crime (out of eight possible, all of which were cited for the burglary charges). The instruction then stated that the punishment for possession of a firearm after a previous felony conviction was imprisonment for two to ten years and a fine of not more than $10,000. The instruction also stated that, if jurors had a reasonable doubt that Harmon was guilty of felonious possession of a firearm after a previous conviction, they should mark the verdict form not guilty. Taken as a whole, this instruction does not clearly state that a prior felony conviction is an essential element of Felonious Possession of a Firearm—after all, according to the instruction, jurors had already found Harmon guilty of that crime in the first stage.

¶ 10 Nowhere in these instructions, or at any time during the trial, were jurors instructed on the crucial fourth element of Felonious Possession of a Firearm. Jurors found Harmon had been previously convicted of a felony. However, the jury was never told that Harmon's prior conviction had any bearing on his guilt for the crime charged in CF–2002–59. In fact, in the second stage jurors were told they had already found Harmon guilty of the crime—felonious possession of a firearm—and were now merely determining the punishment which would be available after a felony conviction. Contrary to the State's argument, Harmon was certainly prejudiced by this instruction: thanks to the omission of the fourth element, he was improperly convicted of an act that is not a crime. As Harmon notes, this is similar to *Allen v. State*.[11] There, the defendant was charged with carrying a loaded firearm in a vehicle, but the jury was instructed in the first stage on simple possession of a firearm. We held that an instruction on simple possession of a firearm "does not apprise the jury of a crime in the state of Oklahoma",[12] and reversed and remanded that conviction. We do the same here.[13] This proposition is

granted, and Case No. CF–2002–59 is reversed and remanded for a new, properly bifurcated, trial.

¶ 11 Given our resolutions of Propositions II and IV, we need not address Harmon's remaining claims.[14]

## Decision

¶ 12 The Judgments and Sentences in Case Nos. CF–2002–53, CF–2002–55, CF–2002–57, and CF–2002–59, are **REVERSED** and **REMANDED** for a new trial. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeal*, Title 22, Ch.18, App. (DATE *@ "yyyy" ** MERGEFORMAT 2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON, JJ., concur.

LUMPKIN, V.P.J. concur in part/dissent in part.

LUMPKIN, Vice–Presiding Judge:
Concur In Part/Dissent In Part:

¶ 1 I dissent to the reversal on the grounds of ineffective assistance of counsel. Under *Livingston v. State*, 1995 OK CR 68, 907 P.2d 1088, no actual conflict of interest in counsel's representation has been demonstrated here. The record reflects trial counsel zealously represented Appellant and aggressively cross-examined Sunny. Her criminal record was extensively covered in counsel's cross-examination and her testimony was thoroughly impeached on that basis. Appellant does not point to any specific evidence which would have come to light if counsel had not previously represented Sunny. Under *Strickland*, Appellant has made no showing of actual conflict or adverse effect. Accordingly, Appellant has not met his burden of establishing ineffective assistance of counsel.

¶ 2 Reversal is warranted in Case No. CF–2002–59 on the basis of *stare decises*. This is

---

**11.** 1994 OK CR 13, 871 P.2d 79, *cert. denied,* 513 U.S. 952, 115 S.Ct. 370, 130 L.Ed.2d 322.

**12.** *Id,* 871 P.2d at 103.

**13.** This Court recently reached the same conclusion, when faced with exactly the same problem,

in *Crews v. State,* No. F–2002–1454 (Okl.Cr. Mar. 25, 2004) (not for publication).

**14.** We note that Harmon has failed to provide a sufficient record for the Court to review his double jeopardy claim raised in Proposition VII.

just the type of problem I warned against in my separate writing to *Chapple v. State*, 1993 OK CR 38, ¶ 1, 866 P.2d 1213, 1219 (Lumpkin, P.J. concurring in results). In the present case though, all the jury did in the first stage was find possession. Not until the second stage did they find Appellant guilty of being a felon in possession.