**UNITED STATES of America, Plaintiff,**

v.

**Marco VALDEZ, et al., Defendants.**

**No. 93–CR–28 B.**

United States District Court,
D. Utah, C.D.

May 18, 1993.

Richard D. McKelvie, David J. Schwendiman, Asst. U.S. Attys., Salt Lake City, UT, for plaintiff.

Ronald J. Yengich, Salt Lake City, UT, for defendants.

## ORDER

BOYCE, United States Magistrate Judge.

The United States has made a motion to recuse Ronald J. Yengich, defense attorney for defendant Marco Valdez on the grounds that Yengich has previously represented Rodney "Hap" Carter, a proposed government witness. (File Entry # 45). Yengich represented Carter at the trial stage and on appeal in a drug prosecution in state court and was successful in obtaining a reversal of Carter's conviction. *State v. Carter*, 812 P.2d 460 (Utah App.1991). Carter is still financially indebted to Yengich, however Yengich has indicated he does not intend to pursue Carter for satisfaction of the indebtedness. Carter has advised the government prosecutor that Carter will not waive any conflict of interest that may arise from Yengich's cross-examination. Marco Valdez has been indicted along with other defendants and charged with nine counts of violation of federal controlled substance laws. Counsel for the United States have stated they believe the motion to recuse defense counsel is required by D.Ut.Rule 302(a) which provides:

"*Statement of Policy.* An attorney, including attorneys who are associated in the practice of law, shall avoid a conflict of interest in representing multiple defendants, targets of a grand jury investigation, or potential government witnesses in the same criminal matter, whether before or after any formal charges have been filed. Except as provided below, an attorney shall not represent more than one defendant or target in the same criminal matter, nor shall an attorney represent a defendant or target in a criminal matter if the attorney has represented or is representing individuals who are potential government witnesses in the same matter ..."

The purpose of the local rule is obvious. It is to prevent conflicts of interest by counsel that could create legal and ethical problems at various stages of a prosecution and to stop potential conflicts at their inception. The record is not clear in this matter as to whether Yengich knew of any potential conflict between himself and Carter before Yengich undertook to represent defendant Marco Valdez. If he did, compliance with rule would have suggested that counsel should refuse to accept the case *or* to make certain no conflict in fact existed. Yengich appears to have satisfied himself that any conflict in this case is not significant.

Yengich has advised the court that Carter's prior state case is completely unrelated

to the charge against Valdez in this case. This is corroborated in part by the circumstances stated in the opinion of the Utah Court of Appeals, *infra*. No confidential communications occurred between Yengich and Carter that provided any information that Yengich could use to impeach Carter at the forthcoming trial. Yengich's representation of Carter terminated before Yengich undertook to represent Valdez in this matter. Yengich's representation of Carter was in 1988 and involved a prosecution for importation of cocaine. Yengich represented Carter at his sentencing and on appeal where the conviction was overturned. Yengich has advised the court that no information was received from Carter in preparation for sentencing in the Utah trial court that could be used in Valdez's favor in this case. Yengich made a motion to suppress evidence in the prosecution of Carter in state court. The state trial court denied the motion. A conditional plea of guilty was made by Carter and the denial of the motion to suppress was appealed to the Utah Court of Appeals, which reversed. The charge against Carter was thereafter dismissed. Yengich certainly became aware of Carter's prior drug activity by Yengich's prior representation of Carter. It is possible the drug activity could be the subject of cross-examination of Carter for credibility purposes. Rule 608(b), F.R.E. However, this information would also be a matter of public record.

At hearing on the motion, Yengich stated he had informed defendant, Marco Valdez, of the possible conflict. Marco Valdez was sworn and testified that Yengich was retained counsel and Valdez wished Yengich to continue a counsel in spite of any potential conflict. Valdez acknowledged he wished Yengich to continue to represent Valdez even if Yengich would be psychologically deterred in full cross-examination of Carter. There is presently no evidence of any circumstances under which Yengich might be inhibited in his examination of Carter or any information before the court as to any sensitive or delicate subject matter that might restrict Yengich's advocacy on behalf of Valdez.

Marco Valdez testified he understood the concept of waiver of any potential conflict of his counsel. He wanted to waive any possible conflict and to have Yengich's continued representation as counsel in this case. Yengich testified there was no conflict in fact in this case and that he should not be recused from representation of Valdez. This is also Yengich's position as stated in a post hearing memorandum.

In a post hearing memorandum, the government continued to assert that a conflict exists and that the integrity of the judicial process requires Yengich's recusal. The court had expressly requested the parties to brief the circumstances of this case against whether recusal was appropriate in light of *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

*Rules of Professional Conduct*

■ D.Utah Rule 103–1(h), effective March 1, 1993 adopts in this District the Utah Supreme Court's Rules of Professional Conduct, effective January 1, 1988. These rules are supplemented by the specific direction of D.Utah Rule 302(a).

Rule 1.9 of the Utah Rules of Professional Conduct provides:

> "A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) Represent another person in the same or a substantially factually related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."

The circumstances of this case do not show that Yengich's representation would violate Rule 1.9. The representation of Marco Valdez is not "in the same or substantially factually related matter" and the interests of Valdez and Carter have not been shown to be "materially adverse." There is no showing that Yengich's representation of Valdez would be materially adverse to the interests of Carter, the government's witness and Yengich's former client. There is a *possible*, but

as yet hypothetical potential for a conflict. Rule 1.9 should not bar Yengich's continued representation of Valdez under such a condition. The knowledge of Carter's prior drug activity is a matter of public knowledge. Yengich has complied with the requirement of disclosure of any potential conflict to the defendant and has presented the circumstances for a knowing waiver by Valdez of any conflict. Although there has been no waiver by Carter there is no showing his interests would be effected by Yengich's representation of Carter. In spite of the absence of a waiver by Carter, there is still no violation of Rule 1.9 by Yengich's representation of Marco Valdez.

*Constitutional Issues and Proper Judicial Administration*

In *Wheat v. United States,* supra, the Supreme Court ruled that the defendant's right to choice of counsel under the Sixth Amendment was not absolute. Even though a defendant is willing to waive any conflict of interest on the part of defense counsel, the court may still deny representation if the fair administration of justice would be impaired by a showing of a "serious conflict of interest." Yengich simply recites that *Wheat* was a case involving joint representation and therefore not applicable to this case. That argument seriously misses the point. *Wheat* did involve the possibility of a counsel having to examine another client. 486 U.S. at 155–156, 108 S.Ct. at 1694–1695. As the government points out in its argument quoting from *Wheat* (File Entry # 67), "Federal courts have an independent interest in ensuring that criminal trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. at 160, 108 S.Ct. at 1698. If counsel is inhibited or reluctant in examination of a former client, then the defendant is not likely to receive proper representation within the meaning of the Sixth Amend-

ment.[1] See *United States v. Iorizzo,* 786 F.2d 52, 57–59 (2d Cir.1986); *United States v. Soudan,* 812 F.2d 920, 927 (5th Cir.1986); *United States v. O'Malley,* 786 F.2d 786, 790–794 (7th Cir.1986). Of course, if counsel's performance is not deficient, merely because there was cross-examination of a former client who may have paid part of the legal fees will not violate the Sixth Amendment. *United States v. Olivares,* 786 F.2d 659, 663 (5th Cir.1986).

The Tenth Circuit has considered the problem of a conflict from defense counsel's prior representation of a witness on several occasions but not necessarily against the concerns for the proper judicial administration addressed in *Wheat.*

In *United States v. Winkle,* 722 F.2d 605 (10th Cir.1983) one of defendant's attorneys had represented a government witness and then cross-examined the witness about where he had obtained the money to pay the attorney when he represented the witness. The trial court quickly observed the obvious conflict. Id., p. 608. On appeal as against a claim of a violation of the Sixth Amendment the court referred to the issue as a "serious specific claim of conflicts of interests." Id., p. 609. It said the concerns over conflicts "are not restricted to cases of joint representation of co-defendants at a single trial." Citing *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).[2] The Court referred approvingly to *Ross v. Heyne,* 638 F.2d 979, 983 (7th Cir.1980) and said "that an actual conflict would arise where defense counsel is unable to cross-examine a Government witness effectively because the attorney also represented the witness." (citing cases) 722 F.2d p. 610. The court then observed (Id.):

"In sum, we conclude we should apply the conflicts principles from the cases of multiple representation of defendants here where the defense counsel in this criminal

---

**1.** In a conflict of interest situation, an affected defendant need not show actual prejudice to establish a Sixth Amendment violation. Defendant need only show that any conflict had some adverse impact on the instances of counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Martinez v. Sullivan,* 881 F.2d 921, 930–31 (10th

Cir.1989); *United States v. Gallegos,* 975 F.2d 710, 713 (10th Cir.1992).

**2.** In *Wood* the court held that if counsel was influenced in strategic decisions by the defendant's employers interests, counsel was not free of a conflict of interest.

trial had represented the principal Government witness in litigation with a factual relationship to some issues in this criminal case. Therefore if the defendant can show that his attorney's previous representation of the witness adversely affected the adequacy of the defendant's representation, then defendant need not demonstrate prejudice to obtain relief."

The court remanded for additional inquiry on the conflict question. It is apparent from *Winkle* that defense counsel's prior representation of a government witness presents a legitimate matter of constitutional concern. It is not a legitimate argument to assert that multiple representation is the only circumstance where Sixth Amendment issues exist and the considerations acknowledged in *Wheat* must be addressed.

■ A defense counsel's prior representation of a government witness does not "automatically" create a conflict of interest adversely affecting representation. If the matter is purely "speculative" the conflict is not sufficient for a Sixth Amendment violation, such as where the witness does not testify. *United States v. Dressel*, 742 F.2d 1256, 1260 (10th Cir.1984). Further, there has been a recognition that a defendant may waive counsel's conflict of interest. *United States v. Burney*, 756 F.2d 787, 791 n. 2 (10th Cir. 1985) (dicta). In *United States v. Davis*, 766 F.2d 1452 (10th Cir.1985) defendant contended his trial counsel's former representation of a government witness denied defendant effective counsel. Id. p. 1457. The court reaffirmed *Winkle* and said where defense counsel has represented a principal witness in litigation that has a factual relationship to issues in a pending criminal case, conflicts of interest principles from multiple representation of defendants apply. A defendant would be entitled to relief if the prior representation of the witness adversely affected the adequacy of the subsequent representation and actual prejudice need not be shown. However, the court found that because the witness's testimony was hostile to the prosecution and favorable to the defense, there was no showing of any adverse effect in defense counsel's performance. The relationship between defense counsel and the witness was minimal. The trial court's failure to make inquiry into the conflict was ruled "harmless error." Id. p. 1457.[3] Where the prior representation did not involve the defendant and pertained to an unrelated matter and where there was nothing to suggest antagonism to the defendant, the conflict is speculative and does not provide a basis for complaint. *Griffin v. West*, 791 F.2d 1578 (10th Cir.1986).

■ In *United States v. Soto–Hernandez*, 849 F.2d 1325 (10th Cir.1988) the defendant was convicted of possession of heroin and contended that because defense counsel had previously represented the person defendant contended coerced him into committing the crime, there was a conflict of interest. The prior representation had been in an unrelated child custody case. It is not clear the person defendant contended compelled him to commit the crime ever testified at trial. At trial, defendant named another person as having coerced him. Because the prior representation by defense counsel was unrelated to the charge against defendant, the court found no actual conflict. However, in *United States v. Bowie*, 892 F.2d 1494 (10th Cir. 1990) the allegation was made that defense counsel curtailed cross-examination of a government witness that counsel had represented in previous plea negotiations. The court noted if the *witness* waives the attorney/client privilege, then there is no conflict. Id. p. 1502.[4] The court said there is no *per se* rule prohibiting representation of a defendant by counsel in a case where counsel has also represented a government witness. *Hernandez v. Mondragon*, 824 F.2d 825 (10th Cir.1987); *United States v. Winkle*, supra. The court said the "potential for conflict is great where there is a substantial relationship between the cases." 892 F.2d at 1502. The court remanded the matter for a post conviction conflict of interest hearing.

---

**3.** Obviously the trial court should act as soon as possible to make inquiry into any possible conflict brought to its attention. *Culyer v. Sullivan*, supra.

**4.** In this case witness Carter has not waived any attorney/client privilege.

Also in *Church v. Sullivan,* 942 F.2d 1501 (10th Cir.1991) the Court of Appeals also remanded for a post conviction conflict of interest hearing in a habeas corpus petition from a New Mexico conviction. Again an allegation was made that because defense counsel had previously represented a prosecution witness, counsel could not effectively examine the witness. The court found the prior representation related to the facts of defendant's case and found an actual conflict of interest. The court also said that the mere fact cross-examination may be vigorous does not necessarily expunge the Constitutional error. Id. p. 1512.

From the above cases it is apparent that, depending on the circumstances, defense counsel's prior representation of a government witness may create a substantial potential for prejudice. It may violate the Sixth Amendment. However, as noted before, a waiver by defendant may avoid the defendant's later claim of conflict. *United States v. Winkle,* supra.; *United States v. Burney,* supra. However, a waiver can only exist if there is a conscious choice to proceed with knowledge of trial counsel's potential conflicts. *Moore v. United States,* 950 F.2d 656, 660 (10th Cir.1991); Also *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978). A waiver must satisfy constitutional requirements. *United States v. Martin,* 965 F.2d 839, 843 (10th Cir.1992).

However, the defendant's right to counsel of his choice is not absolute even where he can retain counsel. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1015 (10th Cir. 1992). Where necessary to further some "social or ethical interest" the court may curtail the defendant's choice of counsel and refuse to accept a waiver. Id. p. 1015. A court confronted with a conflict "must take adequate steps to" determine if other counsel is required. *Wheat,* supra, 486 U.S. at p. 160, 108 S.Ct. at p. 1697; *United States v. Suntar Roofing, Inc.* 897 F.2d 469, 480 (10th Cir. 1990). It is "not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal

cases [that] may be jeopardized by unregulated" conflicts. *Wheat,* supra, 486 U.S. p. 160, 108 S.Ct. p. 1697. As the government observes there are other interests than just those of the defendant that are at stake.

The defendant in this case has given sworn testimony that he is fully aware of any conflict but is willing to waive it in order to continue Yengich's representation. If defendant is convicted he may still be motivated to make a desperation assertion of a conflict to obtain a new trial. See *Wheat* at p. 161–162, 108 S.Ct. at p. 1698–1699. It is for this reason proper judicial administration gives the court some latitude and discretion to refuse representation when a conflict exists. Id. p. 162, 108 S.Ct. p. 1698. As *Wheat* makes clear, even if there is a waiver it may be declined by the court. Id., 486 U.S. at 162, 108 S.Ct. at 1698. *Wheat* also makes it clear that the district court must recognize a "presumption in favor of petitioner's counsel of choice" and the presumption may be "overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id. p. 164, 108 S.Ct. p. 1700.

### Utah Rule 302(a)

■ This district has adopted a rule to endeavor to keep conflicts to a minimum. The local rule is broader than Rule 44(c), F.R.Cr.P. and supplements it. The rule is partly stated in policy terms and intended to advise counsel of the areas for conflict before trial, at trial and sentencing.[5] In this case the prosecution acted properly in filing the motion for recusal. A prosecutor should bring to the court's attention any possible conflict of counsel so that it may be resolved on the record in pretrial proceedings rather than await trial or post conviction challenge. Post conviction challenges consume judicial resources and undermine confidence in the fair administration of justice. Where the challenge is to the effectiveness of defense counsel it often forces counsel to take a position adverse to the former client, causes counsel to defend after the fact without compensation for the defense of counsel's own

---

5. D.Ut.Rule 302(a) expressly refers to conflicts that may occur under the United States Sentenc-

ing Guidelines (USSG). The USSG raise many areas for potential conflicts for counsel.

conduct, and with hindsight, defend the action taken. Also, the expanding challenges to effectiveness of counsel discourage some talented persons from representation of criminal defendants. It is better to have matters of defense and prosecution counsel's actions resolved in the trial court before trial, if possible, rather than in post conviction proceedings. This reduces the problems of judicial administration.

 D.Ut.Rule 302(a) if read literally would bar Yengich's representation of defendant because of Yengich having previously represented Carter. However, Rule 302(a) must be read in conjunction with constitutional and ethical standards. Representation is not prohibited if there is no actual or realistic potential for a conflict of interest. The rule should be interpreted in light of Rule 1.9 of the Rules of Professional Conduct and the right of a criminal defendant to make a choice of retained counsel. *Wheat,* supra. A presumption favors the defendant's choice of counsel after defendant is charged,[6] unless for reasons of ethics and judicial administration, defendant's choice of counsel should be disallowed. Id.

### *CONCLUSION*

In this case, defense counsel has come before the court and fully disclosed the facts behind his representation of the government witness. There is in this case no violation of ethical standards. The prior representation of the government witness by defense counsel did not involve the same matter as is before the court for trial. Representation of defendant Marco Valdez by Yengich will not involve an actual conflict of interest. The ethical and judicial administration considerations that could favor the motion to recuse do not predominate in this case over the defendant's right to his choice of counsel. The defendant has made a knowing, intelligent and voluntary waiver of any potential conflict of interest of his counsel after full notice of any potential harm to defendant. This is an effective waiver under the Sixth Amendment. *Johnson v. Zerbst,* 304 U.S.

458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There does not appear to be any likelihood of a violation of any attorney/client privilege that may exist between the government witness and defendant's counsel. Therefore,

**IT IS HEREBY ORDERED** that the government's motion to recuse defendant Marco Valdez's counsel, Ronald J. Yengich, is denied.

---

6. This may not necessarily be the case in pre-charge representation circumstances where the Sixth Amendment does not apply. *United States* *v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Different considerations may apply as to grand jury investigations.