**UNITED STATES of America,
Plaintiff,**

v.

**Roberto TRUJILLO, Defendant.**

No. 03–40134–01–RDR.

United States District Court,
D. Kansas.

Jan. 30, 2004.

Anthony W. Mattivi, Assistant U.S. Attorney, Office of United States Attorney, Topeka, KS, for Plaintiff.

Diane F. Barger, Diane F. Barger Law Office, Wichita, KS, for Defendant.

1. This motion is entitled "sealed" and was originally filed under seal as Doc. 8 in this case; however, at the hearing of this matter on January 15, 2004, the court ordered all documents pertaining to this motion to be unsealed and the motion was re-filed by the clerk's office as Doc. 28.

2. *United States of America v. Roberto J. Trujillo*, District of Kansas Case No. 03–40097–02–SAC.

3. *United States of America v. Alejandro M. Trujillo*, District of Kansas Case No. 03–40097–01–SAC. Defense counsel appeared on behalf of Roberto J. Trujillo and Alejandro Trujillo at the their joint first appearance on September 16, 2003 in Case Nos. 03–40097–02–SAC and 03–40097–01–SAC, respectively. On that date, a written waiver of conflict of

## MEMORANDUM AND ORDER

SEBELIUS, United States Magistrate Judge.

This matter comes before the court on plaintiff's Sealed Motion for Determination of Conflict (Doc. 28)[1] with regard to the current representation by attorney Diane F. Barger ("defense counsel") of the defendant in this case, Roberto Trujillo, in light of her current representation of his son, Roberto J. Trujillo, the defendant in another pending case,[2] and her former representation of another of his sons, Alejandro Trujillo, the defendant in another pending case.[3] Defendant has filed a timely response (Doc. 16) to the government's motion and the government has replied with a Motion for Hearing (Doc. 19), which was granted on December 30, 2003 (Doc. 20). A hearing on the matter was held January 15, 2004 (Doc. 29). Plaintiff appeared by and through counsel, Anthony W. Mattivi, Assistant United States Attorney. Defendant appeared in person and through counsel, Diane F. Barger. The matter is now ready for decision.

While styled as a motion for determination of conflict, and filed only in the above-captioned case, the government's motion is

interest was filed by each defendant in his respective case. Defense counsel continued to represent Alejandro Trujillo in his case, including appearing on his behalf at a detention hearing in this court on September 18, 2003, and completing the omnibus report in his case, until she filed a motion to withdraw from the case on October 20, 2003. On October 9, 2003, both Roberto J, Trujillo and Alejandro Trujillo were re-indicted on a First Superseding Indictment in Case Nos. 03–40097–02–SAC and 03–40097–01–SAC, respectively. When the brothers made a joint first appearance on this superseding indictment in their respective cases in this court on October 28, 2003, defense counsel appeared on behalf of Roberto J. Trujillo only, and Alejandro Trujillo was represented by another attorney who is not associated with defense counsel in the practice of law.

the functional equivalent of a motion to disqualify defense counsel from her representation of both this defendant and defendant Roberto J. Trujillo in Case No. 03–40097–02–SAC. This is because, were the court to determine that a conflict situation exists with regard to defense counsel's representation of these two individuals such that her continued involvement in this case would be improper, the same conflict situation, and the ethical rules pertaining to attorney representation, could likely preclude defense counsel from continued representation of either client.[4] After carefully considering the filings by the parties, as well as the proffered evidence and argument from the hearing of this matter, the court does not find that either an actual or potential conflict situation exists with regard to defense counsel's representation of these two individuals sufficient to merit her disqualification from continued representation of the defendant in this case. Because the court does not find a conflict situation to merit defense counsel's disqualification in this case, the court need not reach the question of whether the government's motion in this case provides the court with an adequate mechanism to disqualify defense counsel from her continued representation of Roberto J. Trujillo in Case No. 03–40097–02–SAC, and consequently makes no finding on that issue.

## I. Factual Background[5]

In its motion, the government identifies three separate bases for its belief that a conflict situation exists with regard to defense counsel's continued representation of defendant. First, that the pending cases against defendant and his sons all stem at least partially from the same set of operative facts, and it is foreseeable that these three individuals would have conflicting interests in the resolution of their respective cases. Second, that the defendant and his sons may also have divergent interests in an ongoing money laundering investigation of the acquisition of assets related to the pending cases. And third, that defense counsel has a personal financial interest in property that is a subject of the investigation related to this case.

At the hearing of this matter, the government proffered the following factual background to illustrate the linkage between the various pending cases and support its bases for belief that a conflict situation exists. The Trujillo family has been the subject of ongoing investigation by law enforcement for the last two years into three distinct areas: illegal Sunday liquor sales, trafficking in methamphetamine, and money laundering. Law enforcement has associated defendant with the liquor investigation and his son, Alejandro Trujillo, with the trafficking in methamphetamine. As part of the methamphetamine investigation, law enforcement worked with a confidential informant to monitor transactions involving Alejandro Trujillo. During the monitored transactions it was observed that the object of

---

4. See Kan. Rules of Prof'l Conduct R. 1.7, cmt. ("If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9."); see also Kan. Rules of Prof'l Conduct R. 1.9 (addressing conflicts of interest between an attorney's current and former clients).

5. In addition to the facts presented in the parties' filings and proffered at the hearing on this motion, both parties also incorporated by reference during the hearing the facts set forth in their respective filings related to the motion to suppress evidence (Doc. 23) pending in this case. The court also has taken the facts as presented in those documents into account in considering this motion.

the exchange, either money or methamphetamine, was contained in plastic bags. The surveillance component of this investigation revealed contact and extensive foot traffic, often with the person involved carrying plastic bags, between the homes of Alejandro Trujillo and defendant, which are across the same street from one another in Emporia, Kansas.[6]

As a result of the methamphetamine investigation a number of search warrants were prepared for locations that were suspected of having evidence of illegal activities, including the home of defendant. It was during the execution of this search warrant upon defendant's residence that the weapon was found that gives rise to the sole charge in the instant case. During the same search of defendant's residence, law enforcement found a total of $2,170.00 ($1,130.00 in bills in a safe under the stairs, and $240.00 in quarters and $800.00 in bills in a safe in the bedroom). The government did not assert that this money had been linked to any illegal activity. However, the government did point out that there was an ongoing money laundering investigation and that there were other locations where search warrants had been executed as a result of the same methamphetamine investigation at which only money was found, and the money was later linked to alleged illegal activities. Also found during the search of defendant's home, were twenty-five twelve-pack cartons of bottled beer and fifteen twenty-four-pack cases of canned beer that the government believes may be related to an ongoing liquor investigation by state authorities.

Additionally, as part of the methamphetamine investigation, law enforcement examined property records related to both the persons and locations suspected of being linked to illegal activity. During this examination law enforcement found defendant to be the registered owner of one of the locations suspected of being a site of illegal activity. As a result, law enforcement then ran defendant's property records and found him to be the owner of a number of properties. Law enforcement believes the number of properties registered to defendant to be inconsistent with his reported income and this disparity is an aspect of the ongoing money laundering investigation.

Also as part of this property records check, law enforcement encountered a joint tenancy warranty deed dated March 7, 2001, conveying a piece of property located in Emporia, Kansas to Roberto Trujillo and defense counsel. It is not clear from the document which Roberto Trujillo, the defendant or his son Roberto J. Trujillo, was involved in this transaction. Law enforcement also found a quit claim deed dated August 20, 2003, in which defense counsel quit-claimed her interest in the

---

6. During the hearing, there was argument related to the import of plastic bags being carried between the homes. It was not indicated what type of plastic bags these were. The police reports of the investigation indicate that methamphetamine was observed at various points in heat-sealed plastic bags. These reports also indicate that money was observed at various points to be carried in plastic grocery-type bags. However, the court was not provided with evidence as to whether the heat-sealed bags of methamphetamine were ever observed to be carried within plastic grocery-type bags. Nor was there evidence proffered to link any particular bags carried between the homes to any particular monitored transaction. Certainly, if a plastic bag was observed being carried to defendant's home that was known to law enforcement to contain methamphetamine, the court believes it would have been provided with such information. Therefore, for purposes of this inquiry, the court will consider the proffered evidence of plastic bags being carried back and forth as evidence of contact between the homes, but not as evidence of any specific illicit nature to that contact.

same piece of property involved in the above-mentioned warranty deed to Roberto J. Trujillo. Law enforcement also found a public record of Emporia property transfers showing an entry on September 2, 2003 of defense counsel quit-claiming her interest in the property to Roberto J. Trujillo. Because of the ongoing money laundering investigation into the acquisition of property by Roberto, Alejandro, and Roberto J. Trujillo, the government considers this piece of property to be subject to investigation and views defense counsel as a potential witness with regard to the above-mentioned property transfers.

Responding to the government's version of the facts giving rise to this case, defendant proffered the following factual information in rebuttal. With regard to the current pending cases, the police reports chronicling the investigation resulting in the instant case, make no mention of any investigation into illegal liquor sales.[7]

There is mention of the sale of liquor without a license by the defendant in the affidavit supporting the application for the search warrant for defendant's home; however, the affidavit provides only the conclusory statement that such activity is occurring without providing any specific factual foundation for the allegation.

There is no mention in any of the police reports of multiple members of the Trujillo family being the targets of any investigation. Rather, all statements related to the focus of the investigation indicate that is was targeted on the activities of Alejandro Trujillo. There is no mention in the police reports of extensive foot traffic between the defendant's home and the home of Alejandro Trujillo. Instead, the police reports make mention on one isolated occasion on August 12, 2003, of Alejandro Trujillo walking over to the defendant's home to get into a vehicle with an unidentified individual. This is the only time in the

---

7. The information provided by defendant regarding police reports of the underlying investigation and the search warrant affidavit was based upon discovery provided to defense counsel through her representation of Roberto J, Trujillo in Case No. 03–40097–02–SAC. During the argument portion of the hearing, the government emphasized the fact that information proffered in this case originated from discovery in the other case as being in itself dispositive with regard to whether a conflict situation exists. The court does not agree. As noted earlier, because of the nature of conflicts of interest, if the court were to have found a conflict in the interests of defendant and Roberto J. Trujillo such that defense counsel could not continue to represent defendant, then potentially defense counsel could also have had a problem continuing to represent Roberto J. Trujillo. Because of this, even though the motion was filed only in this case, it had potential implications for the other case as well. Counsel for the government alluded to this himself when he indicated to the court that he regretted not filing the same motion in Roberto J. Trujillo's case as well.

Additionally, in proffering discovery materials she obtained through her representation of

Roberto J. Trujillo, defense counsel did not reveal any privileged information, nor did she reveal any confidential information to the detriment of the interests of Roberto J. Trujillo. Indeed, during the portion of defendant's proffer based on the police reports and warrant affidavit, Roberto J. Trujillo's name was not mentioned except by negative implication when defense counsel discussed the fact that the records revealed the investigation was targeted only on the activities of Alejandro Trujillo.

Therefore, despite the government's insistence that the use of this discovery information provides irrefutable evidence of an impermissible conflict, to the extent the court sees the use of this information as being at all meaningful, it sees this as exactly the type of benefit that would lead the two Trujillos to both want to be represented by defense counsel in the first place, i.e. because none of this information was provided in discovery in the instant case, defendant would have much less knowledge of the facts surrounding the investigation that lead to him being charged if he were not represented by defense counsel.

surveillance reports that mention is made of any foot traffic between Alejandro Trujillo's home and that of defendant, in this entry there is no mention of any plastic bag being carried by Alejandro Trujillo, and no methamphetamine was delivered by Alejandro Trujillo during a monitored transaction Alejandro Trujillo participated in later that day.

There are only three mentions of this defendant in the affidavit supporting the warrant for the search of his home: the reference to Alejandro Trujillo walking over to this defendant's home to get into a vehicle on August 12, 2003, the fact that this defendant owned the house for which the warrant was sought, and the aforementioned conclusory reference to this defendant being involved with sale of liquor without a license. There is no further mention of any involvement by this defendant with any matters that were the subject of the investigation regarding Alejandro Trujillo.

With regard to the potential money laundering investigation, defendant proffered that there have been no charges filed against defendant or his son Roberto J. Trujillo related to any money laundering activities. Defendant has worked for IBP, Inc. in Emporia for 28 years. During that time, defendant has lived frugally and acquired properties around the Emporia area that were not sought by others due to their poor condition for approximately $2,000.00 to $3,000.00 each. Defendant has then improved those properties and allowed family members to live in them or has used them as rentals. No financial information has been given to defendant as part of discovery in this case. Prior to law enforcement seeking the search warrant for defendant's home, defendant had gone to the Bank of America and taken out a remodeling loan, and this was the origin of most of the money found by law enforcement in the search of defendant's home.

With regard to the property transaction in which defense counsel was involved, defendant proffered that defense counsel purchased the real estate with an existing house on it that appeared to need renovation. Defense counsel intended the purchase as an investment with the plan being to repair the existing house and then resell the property. Defendant's son, Roberto J. Trujillo, has a unique skill and talent with regard to woodwork, construction, electrical work, and drywall. Defense counsel put Roberto J. Trujillo's name on the property to facilitate his being able to obtain needed materials and permits in order to remodel the house on the property. Prior to March 2001, defense counsel set-up an operating account containing approximately $5,000.00 to be used for expenses relating to the remodeling of the house on the property. This action occurred long before any allegations of criminal activity reflected in the current indictments of either defendant or his sons. Roberto J. Trujillo's name was put on the operating account so that he could use it to purchase supplies. Prior to the remodeling work beginning, defense counsel received notice from the city of Emporia that the house needed to be demolished. On June 21, 2001, defense counsel executed a demolition contract with the city of Emporia for the house to be demolished. On August 21, 2001, a certificate of completion of demolition was executed by the city of Emporia and defense counsel stating that the house had been demolished as of August 2, 2001. On February 27, 2002, a package of house plans was purchased by defense counsel from Sutherland Lumber Wichita, L.P. The electrical and plumbing connections remain in place on the property and some concrete has been poured. Even though the property was placed in joint tenancy with Roberto J. Trujillo, defense counsel still received calls and communications with regard to the property.

On August 20, 2003, defense counsel quitclaimed the property to Roberto J. Trujillo so that people would deal only with him with regard to the property. This quit claim deed was filed on September 2, 2003.

## II. *Discussion*

### I. Standard of Decision

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." [8] It does not say that the accused shall always be able to be represented by any attorney that he might choose. Indeed, there are important exceptions to the accused having a right to be represented by any counsel he might choose.

Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government. [9]

In addition to these exceptions, there is also a recognized exception to the accused having his choice of counsel when the counsel desired would not be able to effectively represent the accused due to a conflict of interest. [10] In essence, the Sixth Amendment is more concerned that an accused receive the assistance of effective counsel than the assistance of his counsel of choice. [11] Because of the danger conflicts of interest pose to the effective representation of counsel, the Federal Rules of Criminal Procedure specifically require a trial court to make an inquiry regarding conflicts in cases where an attorney represents multiple co-defendants. This inquiry

---

**8.** U.S. Const. amend. VI.

**9.** *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (citations omitted).

**10.** *See, e.g., id.* at 162, 108 S.Ct. 1692. ("Where a trial court justifiably finds an actual conflict of interest, there can be no doubt that it may ... insist that defendants be separately represented."); *Matter of Special February 1977 Grand Jury*, 581 F.2d 1262, 1264 (7th Cir.1978) (stating that, at least in the grand jury context, a court may disqualify counsel against the wishes of a defendant "without proof of the existence of an [a]ctual conflict of interest .... when the possibility of a conflict becomes great enough"); *see also Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway*, the Supreme Court discussed the dangers a conflict of interest potentially poses to the effective assistance of counsel:

Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example ... [a conflict might prevent an attorney] from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters. *Id.* at 489–90, 98 S.Ct. 1173.

**11.** *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692. ("Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.") (citations omitted).

is addressed by Fed.R.Crim.P. 44(c), which provides:

(1) Joint Representation. Joint representation occurs when:

(A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and

(B) the defendants are represented by the same counsel, or counsel who are associated in law practice.

(2) Court's Responsibilities in Cases of Joint Representation. The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

In this instance, the two defendants currently represented by defense counsel are not charged jointly, and their cases have not been joined for trial, so they are not at this time co-defendants and Rule 44(c) does not directly apply. However, even in cases where an attorney represents multiple parties who are not co-defendants, the court, nonetheless, has both the right and obligation to inquire into any allegations of conflict of interest affecting the representation of a defendant by counsel under its independent duty to ensure that a criminal defendant receives a fair trial.[12]

The primary difference between this broader inquiry under the Sixth Amendment right to a fair trial, and the inquiry under Rule 44(c)(2) seems to be one of burden. Under Rule 44(c)(2), the court is instructed to protect each defendant's individual right to conflict-free counsel "[u]nless there is good cause to believe that no conflict of interest is likely to arise ...." The phrasing of this instruction to the court places the burden on the party seeking to preserve the multiple representation to make a good cause showing that a conflict of interest is unlikely.

The broader inquiry by the court in the interests of ensuring a fair trial does not necessarily presuppose that the representation is problematic or place the burden on the party seeking the representation to rebut that presumption.[13] Rather, the Sixth Amendment ordinarily contemplates that a defendant is entitled to be represented by counsel of his own choosing unless there is some showing that certain representation would not be appropriate.[14] The right to counsel is intended to ensure that an accused will have the effective assistance of counsel to protect his rights, and thus the court should be concerned with investigating any problem that might prevent the counsel the accused has selected from being able to provide effective assistance.[15]

█ It is appropriate to assume initially that the defendant's choice of counsel is proper unless the government can lay a foundation showing good cause to believe that there is either already an actual conflict of interest interfering with the ability of counsel to provide effective assistance to the defendant, or a probability that such a

---

**12.** *Id.* at 161, 108 S.Ct. 1692 ("[T]he trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth amendment.").

**13.** *See id.* at 164, 108 S.Ct. 1692 ("The District Court must recognize a presumption in favor of [a defendant's] counsel of choice, but

that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential conflict.").

**14.** *See id.* at 158–59, 108 S.Ct. 1692 (summarizing the Sixth amendment right to counsel and the important exceptions to an accused being represented by counsel of choice).

**15.** *Id.* at 159, 108 S.Ct. 1692.

conflict will develop during the case.[16] While not controlling, the considerations outlined in Fed.R.Crim.P. 44 are instructive. Once an initial showing of a probable conflict has been demonstrated, the defendant should be entitled to show that "there is good cause to believe that no conflict of interest is likely to arise" in the same manner as contemplated by Rule 44(c)(2).

As the Supreme Court observed in *Wheat*, Rule 44(c) does not provide specific guidance on what measures a trial court must take to protect a defendant's right to counsel in the event good cause showing that no conflict is likely cannot be made.[17]

One possibility is to disqualify counsel from further representation of the defendant.[18] However, disqualification may not be the only remedy depending on the type and severity of the conflict situation, and whether the defendant is willing to make an informed waiver of the conflict.[19] Therefore, once there has been a threshold showing by the government that there is good clause to believe that a conflict of interest is probable, unless that showing is rebutted in some fashion by the defendant, the court then must determine whether or not the conflict is one that can be solved by waiver and, if so, whether or not the defendant is willing to waive the conflict.[20]

16. "The test for determining whether there is an impairing conflict is probability, not certainty." *Pirillo v. Takiff*, 462 Pa. 511, 529, 341 A.2d 896, 905 (1975); *see also Wheat*, 486 U.S. at 159, 108 S.Ct. 1692 (commenting that the presumption in favor of the defendant having counsel of choice may be overcome by a showing of "a *serious* potential for conflict") (emphasis added.); *Grand Jury Proceedings of Doe*, 859 F.2d 1021, 1026 (1st Cir.1988) (discussing the need for an actual or "serious potential" conflict to justify disqualification and commenting that the government "bears a 'heavy burden' in demonstrating that disqualification is justified") (citations omitted); *Matter of Special February 1977 Grand Jury*, 581 F.2d 1262, 1264–65 (7th Cir.1978) (declining to adopt a per se rule that the potential for conflict is enough to support disqualification and commenting that a trial court's denial of disqualification would not be disturbed "absent a clear showing of either an actual conflict of interests or a *grave danger* of such a conflict") (emphasis added).

The government argues that the existence of a *possibility* of conflict of interest is sufficient for the court to exercise its discretion to disqualify an attorney under *Wheat*. The court does not agree. Instead disqualification should be based at least upon a standard of *probability* of a conflict developing rather than a mere possibility. "A mere possibility of a conflict of interest is insufficient for the recusal of defense counsel" *United States v. Penn*, 151 F.Supp.2d 1322 (D.Utah 2001) (quoting *Morris v. California*, 966 F.2d 448 (9th Cir.1991); *see also Grand Jury Proceedings of Doe*, 859 F.2d at 1026 (discussing the

need for "a direct link between clients of an attorney—or at least some concrete evidence that one client, such as an immunized witness, has information about another client, such as a target of a grand jury investigation—before the right to counsel of choice is barred by disqualification").

17. *Wheat*, 486 U.S. at 161, 108 S.Ct. 1692.

18. *Id.*

19. "When the court learns of a possible conflict, it must explore the problem. If that inquiry reveals an actual or potential conflict, the court has a 'disqualification/waiver' obligation. If the conflict turns out to be actual and severe, the district court must disqualify the attorney. If the court discovers a lesser or potential conflict, it must proceed to a ... hearing to obtain an informed waiver of the conflict from the defendant." *United States v. Leslie*, 103 F.3d 1093, 1098 (2nd Cir.1997) (citations omitted). "[A] district court has two distinct obligations during criminal proceedings: (1) to initiate an inquiry whenever it is sufficiently apprised of even the possibility of a conflict of interest, and (2) to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict." *United States v. Rogers*, 209 F.3d 139, 143 (2nd Cir.2000).

20. "When a district court is aware ... of a potential conflict of interest on the part of the defendant's attorney, the court must inquire as to whether the defendant is aware of and

■ Not all conflicts are curable by waiver and the court is not obligated to accept a waiver and allow continued representation if it determines that to do so would not be in the best interests of justice.[21] "An accused's right to waive conflict-free representation is not absolute,"[22] and a waiver need not, and should not, be accepted "if the conflict is so severe as to render a trial inherently unfair."[23] Matters are further complicated by the fact that the court must decide whether to accept a waiver "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."[24] However, despite any difficulty or uncertainty, it remains that there is a presumption that the

defendant is entitled to be represented by his counsel of choice, that cannot be lightly brushed aside, and necessitates the court considering the possibility of a waiver.[25]

■ In the event the court finds that a waiver would be an acceptable means of dealing with a conflict, the waiver must be voluntary, knowing, and intelligent, "with sufficient awareness of the relevant circumstances and likely consequences."[26] The Tenth Circuit has provided guidance with regard to procedure to be follow in obtaining an effective waiver:

[I]n order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from

waives this conflict." *United States v. Morelli,* 169 F.3d 798, 812 (3rd Cir.1999).

21.

[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

*Wheat,* 486 U.S. at 162, 108 S.Ct. 1692 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3rd Cir.1978)).

[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 163, 108 S.Ct. 1692.

22. *United States v. Vaquero,* 997 F.2d 78, 90 (5th Cir.1993).

23. *Id.*

24. *Wheat,* 486 U.S. at 162, 108 S.Ct. 1692.

25. In exercising its discretion to decline a waiver the court "must recognize a presumption in favor of [the defendant's] counsel of choice." *Id.* at 164, 108 S.Ct. 1692.

It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice. The right to retain counsel of choice stems from a defendant's right to decide what kind of defense he wishes to present. Attorneys are not fungible; often the most important decision a defendant makes in shaping his defense is his selection of an attorney. When a defendant is financially able to retain counsel, the choice of counsel rests in his hands, not in the hands of the state. A defendant's right to retain counsel of his choice therefore represents a right of constitutional dimension, the denial of which may rise to the level of a constitutional violation.

*United States v. Collins,* 920 F.2d 619, 624–25 (10th Cir.1990) (internal citations omitted).

26. *United States v. Renda,* 669 F.Supp. 1544, 1548 (D.Kan.1987) (citations omitted).

the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel.[27]

A more detailed procedure, addressing the same requirements, and providing additional guidance is provided in *United States v. Renda:*

> As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." ... Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloque [sic] between defendant and judge, will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.[28]

A key component of the waiver procedure must be the active and affirmative participation of the court, in order to clearly convey the importance of the waiver decision to the defendant. The defendant must be made to fully appreciate not only that he is entitled to the assistance of conflict-free counsel; but also, what a conflict of interest is, and the implications it holds for his representation, so that he understands what it is that is being given up through the waiver.[29]

■ Moreover, in addition to the defendant's Sixth Amendment right to conflict-free counsel, a waiver must also, as a threshold matter, address the ethical duty of the conflicted, or potentially conflicted, attorney. Kansas Rule of Professional Conduct 1.7, which provides the general rule on conflicts of interest, permits an informed waiver of a conflict by the client, but only when "the lawyer reasonably believes the representation will not be ad-

---

27. *United States v. Migliaccio,* 34 F.3d 1517, 1527 (10th Cir.1994) (quoting *United States v. Winkle,* 722 F.2d 605, 611 (10th Cir.1983) (quoting *United States v. Martinez,* 630 F.2d 361, 364 (5th Cir.1980))).

28. 669 F.Supp. at 1546 (quoting the Advisory Committee notes to the 1979 amendment to the Federal Rules of Criminal Procedure).

29. "If the trial judge specifically admonishes the defendants of the potential for future conflict and the defendants knowingly, intelligently and voluntarily waive the right of separate representation, the law requires nothing more". *Id.* at 1549 (quoting *United States v. Williams,* 809 F.2d 1072, 1085 (5th Cir. 1987)). However,

> [a] waiver is ordinarily an intentional relinquishment or abandonment of a *known* right or privilege. [Therefore, the] determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Id.* (citations omitted).

versely affected." [30] While cases examining the conflict issue often focus more extensively on the Sixth Amendment right, the ethical dimension is also an important component of any inquiry. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." [31] While the defendant may require the most attention from the court during the process of obtaining a valid waiver, there is no point to pursuing a waiver unless the attorney, who is more experienced and knowledgeable with regard to conflicts, is able to express the belief that "the representation will not be adversely affected" in accordance with his ethical obligation.

Assuming that the attorney can express such a belief and the defendant responds affirmatively throughout the waiver procedure, then the waiver is effective to address the conflict situation as it exists at the time, from both the Sixth Amendment and professional ethics standpoints. However, "a single waiver ... may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings," and the court, and counsel, remain under a "continuing obligation ... to guard against conflicts of interest that may worsen as circumstances change during the course of representation." [32] Through a diligent adherence to this responsibility, all parties may be assured that the trial of the matter will be fair to all concerned and result in a resolution that is ultimately free from criticism on conflict of interest grounds.

In light of the foregoing the court will now examine the facts of the three bases for conflict put forth by the government.

### B. The Potential for Conflict Posed by the Current Pending Cases

■ At this time defense counsel currently represents both the defendant in this case, and his son, Roberto J. Trujillo, in pending Case No. 03–40097–02–SAC. Additionally, defense counsel formerly represented another of defendant's sons, Alejandro Trujillo, in pending Case No. 03–40097–01–SAC. The government contends that because of the close relationship of these defendants, and the fact that all of their indictments stem from essentially one investigation, that a serious potential for conflict is raised if they are represented by the same attorney. Defendant contends that there is not currently any conflict presented by defense

---

**30.** Kan. Rules of Prof'l Conduct R. 1.7. The full text of Rule 1.7 is as follows:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

**31.** *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692 (commenting that professional ethical guidelines also impose limitations on multiple representations of conflicting, or potentially conflicting, interests).

**32.** *Migliaccio,* 34 F.3d at 1529 (quoting *United States v. Swartz,* 975 F.2d 1042, 1049 (4th Cir.1992)).

counsel's representation, and no significant likelihood that one will develop.

It is difficult for the court to see how the current interests of the defendants in the pending cases are, or are likely to come into, conflict. Defendant in this case is charged with a single count of a weapons violation based on the discovery of a shotgun with a barrel of less than eighteen inches in his home. Defendant's sons Roberto J. and Alejandro Trujillo are charged, in their respective cases, with multiple counts related to alleged drug trafficking activities. While the search warrant resulting in defendant's charge was issued as result of the drug investigation into his son's activities, there has been no suggestion that any evidence related to any drug trafficking activities was found when that warrant was executed. There was a sum of money found in defendant's home during the search; however, counsel for the government was quite clear at the hearing of this matter that it is not alleged that the money found in defendant's home is tied to any illegal activity. Similarly, there has been no suggestion that there was any other evidence found during the underlying investigation of the sons' activities that relates to the weapons charge against defendant.

As such, while the cases of all these defendants may have their genesis in the same investigation, there is no common relationship between the charges they face that would suggest any probable likelihood that their interests will of necessity conflict. The elements of proof the government must meet with regard to the weapons charge against the defendant are different than those related to the drug charges against defendant's sons. There is no indication that the confidential informant that assisted in the methamphetamine investigation would have any evidence to offer with regard to the weapons charge pending against defendant. Nor,

with the possible exception of law enforcement officers testifying with regard to the early investigation, is there any indication that there would be any common witnesses against defendant and his sons if all proceeded to trial on their respective charges. Details of the methamphetamine investigation, beyond the basic facts necessary to explain the search of defendant's home, do not appear relevant to the prosecution of defendant. Similarly, nothing about the search of defendant's home appears relevant to the prosecution of the other Trujillos on the drug charges.

Taking the facts in the light most favorable to the government, they rely on the facts that the family members were jointly suspected of criminal activity by law enforcement, jointly investigated, and that there was observed contact between the homes of defendant and Alejandro Trujillo, to present the implication that there is some coordinated criminal activity between all three of the Trujillos. However, as matters stand with regard to the pending cases, there are no unifying charges common to all three individuals, the charges faced by defendant are of a completely different type and character from the charges pending against his sons, and there is no indication of any specific impending development that would make a conflict between the interests of this defendant and his sons probable.

At this time, presumably each of these defendant's primary interest is avoiding conviction on the charges pending in his case, and there is no indication that in order to do so he must contravene that same interest on the part of any of the others. The government raises the possibility that this might no longer be true in the event one of these defendants was given the opportunity to resolve his case more favorably in exchange for testimony against one or more of the others. At the

time such an event were to occur, it is possible that there would be an actual or probable conflict of interest among defense counsel's clients that would make her continued multiple representation impossible; however, the court must examine the conflict picture as it exists *at this time* to determine whether a conflict either exists or is probable. The court should not speculate on every theoretical development that could possibly occur in the case until it finds a scenario leading to a conflict and then use such speculation as a basis to deny defendant the counsel he has chosen.[33]

Therefore, the court finds that at this time there is no actual conflict between the interests of defendant and his sons, and no reasonable probability that such a conflict is likely to occur, with regard to the current pending cases. Accordingly, the court concludes that there is not an adequate showing based on the current pending cases to override defendant's freedom to be represented by the counsel of his choice.

## C. The Potential for Conflict Posed by Ongoing Investigations

■ The government's second basis for its contention that defense counsel's multiple representation is subject to an actual or potential conflict of interest is that there are ongoing investigations involving defendant and his sons related to illegal liquor sales and money laundering. Unlike the charges in the pending cases discussed above, the allegations with regard to these investigations do involve defendant and his sons allegedly engaging together in the same criminal activity.

With regard to the liquor investigation, there are purchases of alcohol attributed to Alejandro Trujillo and a significant amount of alcohol found stored in defendant's home during the execution of the search warrant. While this investigation was not deemed likely by the government to be the focus of federal law enforcement activity, the point remains that if charges against the Trujillos in state court did result from this investigation, then their interests in any such litigation would still have the possibility of giving rise to a conflict that could affect the propriety of them being represented by the same attorney in federal court.

There was not enough specific information tendered with regard to this ongoing investigation for the court to assess whether charges are forthcoming, or against whom. However, because the point of an investigation is normally to bring charges, and because there is a factual connection between defendant, one of his sons, and alcohol, this investigation presents the court with a circumstance that could possibly result in a conflict.

With regard to the money laundering investigation, there was a significant amount of money found in cash in defendant's home and allegations by the government of unusual property ownership by defendant, with regard to houses, and his son Alejandro, with regard to pasture land, cattle, and a night club. Defendant explained these circumstances by saying the money is the proceeds of a remodeling loan. The houses were purchased at low prices due to their condition over a number of years with the proceeds of defendant's salary. The pasture land containing the cattle is leased. And the night club is only managed, not owned, by Alejandro Trujillo.

The court's role during this inquiry is not to evaluate either these allegations or explanations as they relate to the potential

---

**33.** *See United States v. Valdez,* 149 F.R.D. 223, 227 (D.Utah 1993) ("If the matter is purely 'speculative' the conflict is not sufficient for a Sixth Amendment violation, such as where [a] witness does not testify.").

legality of any activity, so much as it is to examine whether these activities represent a nexus of interests between the Trujillos that could ultimately give rise to a conflict. Based on the allegations made, and the facts of the investigation as revealed to the court, there simply is not sufficient information for the court to find a probability that a conflict will result from the ongoing money laundering investigation.

As no charges have been filed linking defendant and either of his sons at this point, the court cannot conclude that a probability of a conflict of interest exists at this time based on these ongoing investigations; however, the potential is there and counsel for all parties are admonished to be alert to this potential to guard against it developing into a problem later on.

Defense counsel, as an attorney licensed in Kansas and subject to the Kansas Rules of Professional Conduct, is prohibited from continuing to represent clients when a conflict of interest develops that will adversely affect the representation.[34] As the attorney with the most direct and intimate knowledge of her clients' interests, and a duty of loyalty to further those interests, she is best positioned to be the first to become aware of any conflict, and if that conflict is one that will adversely affect her representation of any client's interest she has an ethical duty to withdraw.[35]

Counsel for the government is also under a continuing obligation to be alert to conflicts of interest in defense counsel's representation, both from a general ethical duty,[36] and, more directly, from the same Sixth Amendment obligation that gives rise to the instant motion.[37] While the court does not find a sufficient conflict situation to conclude that defense counsel's continuing representation is improper at this time based on this motion, the concerns identified by the government do evidence a sufficient possibility of future conflict to merit careful attention by the court and all parties concerned.

### D. The Potential for Conflict Based on Defense Counsel's Personal Financial Interest

■ The final basis the government offers for its contention that there is a conflict problem with defense counsel's continued representation of defendant is her own personal financial involvement with defendant's son Roberto J. Trujillo. The government views all property owned by the Trujillos as a focus of the ongoing money laundering investigation and sees defense counsel as a potential witness with regard to the acquisition of property because of the appearance of her name on documents related to the transfer of a parcel of real property to Roberto J. Trujillo.

---

34. *See* Kan. Rules of Prof'l Conduct R. 1.7.

35. *Id.; see also Id.,* cmt. ("If such a[n impermissible] conflict arises after representation has been undertaken, the lawyer should withdraw from the representation."); Kan. Rules of Prof'l Conduct R.1.16 ("[A] lawyer ... where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in the violation of the rules of professional conduct or other law...."); *Edens v. Hannigan,* 87 F.3d 1109, 1114 (10 Cir.1996) ("[D]efense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest

arises during the course of trial.") (citations omitted).

36. *See* Kan. Rules of Prof'l Conduct R. 8.3 ("A lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.").

37. "We would also observe that when the government is aware of a conflict of interest, it has a duty to bring it to the court's attention and, if warranted, move for disqualification." *Migliaccio,* 34 F.3d at 1528 (citations omitted).

Defense counsel's proffered explanation for the circumstances surrounding the property transfer at issue are both persuasive and well-documented. The transfers in question took place in the past, are supported by logical explanations, and do not, as explained, present a likelihood that any impropriety was involved. Based upon the evidence proffered by the parties, the court does not believe it likely that either the property in question, or the transactions involving it, will become the subject matter of any criminal proceeding.

Moreover, even if the court was not persuaded by the evidence proffered to explain the innocence of the property relationship between defense counsel and her client, the transfers at issue, like the rest of the money laundering investigation discussed above, do not at this time figure in any pending matter, and do not present either an actual or probable conflict of interest. It is true, that just as an attorney should not represent a client when his duties to the interests of another client will conflict and negatively affect the representation, so too an attorney should not represent a client when his or her own interests would interfere with effective and loyal representation.[38]

As a consequence, there is the possibility that defense counsel's investment in property that is now titled to her client, could through a variety means, burgeon into a conflict that would negatively impact her continued representation in the cases at issue. However, as previously noted with regard to the other bases of conflict asserted, this situation does not present an actual conflict at this time, nor does it make a future a conflict appear probable. Rather, it is yet another area in which

there is a present circumstance that could lead to a conflict later on, and thus should be carefully monitored by all participants in carrying out their duties and responsibilities in this matter.

III. Conclusion

Based on the foregoing discussion, the court concludes that there is not an actual conflict of interest between defendant and his sons to merit the disqualification of defense counsel from her representation in this case. Further, the court does not find there to have been an adequate showing of potential conflict by the government to merit the disqualification of defense counsel on that basis either. This is not to say that the court finds the motion frivolous, or the inquiry it necessitated unfounded. Rather, the bases for belief that a conflict situation exists put forth by the government all reflect circumstances where the development of a conflict of interest negatively affecting defendant's assistance of counsel is possible. However, at this time none of the conflict possibilities asserted has developed sufficiently for the court to conclude that a future conflict is probable, as would need to be the case before the court could rightly interfere with defendant's freedom to be represented by the counsel of his choice.

However, because of the many and varied ways that a conflict could develop from the circumstances presented, the court, out of an abundance of caution, believes it would be best to hold a waiver hearing with both the defendant, and his son Roberto J. Trujillo, in order to dispel any possibility that they are not completely informed about the nature of their right to the assistance of conflict-free counsel or aware of the dangers a conflict of interest

---

38. *See* Kan. Rules of Prof'l Conduct R. 1.7 (addressing conflicts of interest generally, including conflicts between the interests of the attorney and the client); *see also* Kan. Rules of Prof'l Conduct R. 1.8 (addressing prohibited transactions between attorneys and their clients).

can pose to their representation.[39] Accordingly,

**IT IS ORDERED** that plaintiff's sealed motion for determination of conflict (Doc. 28) is denied.

**IT IS FURTHER ORDERED** that a waiver hearing shall be conducted at the earliest possible time before the undersigned magistrate judge in both the *United States of America v. Roberto Trujillo,* Case No. 03–40134–01–RDR, and the *United States of America v. Roberto J. Trujillo,* Case No. 03–40097–02 SAC. Both defendants are required to appear at this hearing in person, as well as by counsel, Diane F. Barger. Counsel should coordinate with the magistrate judge's courtroom deputy to arrange the date and time of this hearing.

**IT IS FURTHER ORDERED** that all exhibits admitted into evidence at the hearing of this matter shall be returned to the parties.

**IT IS SO ORDERED.**

---

**39.** The court notes that written waivers of any conflict have been filed by both Alejandro and Roberto J. Trujillo relating to defense counsel's former initial representation of them both in Case Nos. 03–40097–01 and –02–SAC currently pending before the court. Alejandro Trujillo subsequently retained separate counsel.